## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Lakritz Adler Development, LLC<br>4326 8th Street, N.W.<br>Washington, D.C. 20011 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-01275-EGS |
| Claude G. Murrell<br>2816 Keith Street<br>Temple Hills, MD 20748 | ) ) ) ) | |
| and | ) ) | |
| Gloria N. Murrell<br>2816 Keith Street<br>Temple Hills, MD 20748 | ) ) ) ) | |
| Defendants. | ) ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Lakritz Adler Development, LLC ("Lakritz Adler"), by and through its undersigned counsel, for its First Amended Complaint against Defendants Claude G. Murrell and Gloria N. Murrell (the "Murrells") states as follows:

1.      This is an action for breach of contract and seeks monetary damages and specific performance arising out of the breach of two separate Real Estate Purchase Agreements for real properties located at 4201 Georgia Avenue, N.W., Washington, D.C. (the "4201 Georgia Avenue Property") and 4205 Georgia Avenue, N.W., Washington, D.C. (the "4205 Georgia Avenue Property").

## PARTIES

2.      Plaintiff Lakritz Adler is a limited liability company organized under the laws of the District of Columbia with a principal place of business located at 4326 8th Street, N.W., Washington, D.C. Plaintiff is a citizen of the District of Columbia.

3.      Defendants Claude G. Murrell and Gloria N. Murrell are individuals with an address of 2816 Keith Street, Temple Hills, Maryland. Defendant's are citizens of the State of Maryland.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a).

5.      Venue in the United States District Court for the District of Columbia is proper under 28 U.S.C. § 1391(a).

## STATEMENT OF FACTS

6.      Lakritz Adler, as purchaser, and the Murrells, as sellers, executed a Real Estate Purchase Agreement, with an effective date of on or about April 5, 2007 (the "4201 Georgia Avenue Agreement"), for the sale of real property located at 4201 Georgia Avenue, N.W., Washington, D.C. A copy of the 4201 Georgia Avenue Agreement is attached hereto as Exhibit A.

7.      Lakritz Adler, as purchaser, and the Murrells, as sellers, executed a Real Estate Purchase Agreement, with an effective date of on or about April 5, 2007 (the "4205 Georgia Avenue Agreement"), for the sale of real property located at 4205 Georgia Avenue, N.W., Washington, D.C. A copy of the 4205 Georgia Avenue Agreement is attached hereto as Exhibit B. The closing on the acquisition on both properties was

scheduled to occur on June 8, 2007, but was postponed to June 22, 2007 by agreement of the parties.

8.     The Murrells made express representations, warranties and covenants in the 4205 Georgia Avenue Agreement.

9.     More specifically, Section 6.5 of the 4205 Georgia Avenue Agreement contains the following express Seller Representation, Warranty and Covenant:

> There is no violation of any Federal or municipal environmental law, order, rule or regulation pertaining to the Property and no "Hazardous Substance" (as said term is hereinafter defined) is located on under or within any portion of the Property. For purposes hereof, the term "Hazardous Substance" means any and all hazardous or toxic, wastes or materials which, because of their quantity, concentration, or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard or nuisance to human health, safety or welfare or to the environment when used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled, including without limitation, any substance, waste or material which is or contains asbestos, radon, polychlorinated biphenyls, urea formaldehyde, explosives, radioactive materials or petroleum products.

10.     On or about May 18, 2007, Lakritz Adler advised the Murrells of the significant environmental problems associated with the 4205 Georgia Avenue Property. Following execution of the 4205 Georgia Avenue Agreement, Lakritz Adler retained Apex Companies, LLC ("Apex") to undertake Phase I and Phase II environmental studies at the 4205 Georgia Avenue Property. These studies revealed the presence of considerable amounts of hazardous materials at the 4205 Georgia Avenue Property. The study revealed, *inter alia*, that a petroleum release occurred at the 4205 Georgia Avenue Property resulting in soil and groundwater contamination throughout the 4205 Georgia Avenue Property. The report raises the distinct possibility that the contamination may

3

have migrated off-site resulting in potential third-party liability. Finally, Apex estimates that the costs associated with remediating the contamination would be in excess of $300,000.00.

11.     The presence of Hazardous Substances at the 4205 Georgia Avenue Property are in direct conflict with the Murrells' express representation, warranty and covenant set forth in Section 6.5 of the 4205 Georgia Avenue Agreement.

12.     A provision in both the 4201 Georgia Avenue Agreement and 4205 Georgia Avenue Agreement requires that settlement on both properties must be fully consummated on the same day, and that one property could not go to settlement without settlement on the other property taking place.

13.     Despite repeated requests by Lakritz Adler to the Murrells to remedy the significant environmental problems associated with the 4205 Georgia Avenue property as required by the express written representation, warranty and covenant contained in Section 6.5 of the 4205 Georgia Avenue Agreement, the Murrells have refused to do so.

14.     Due to the Murrells' failure to address the environmental hazards associated with the 4205 Georgia Avenue Property, Lakritz Adler was precluded from closing on the 4201 Georgia Avenue Property and the 4205 Georgia Avenue Property on June 22, 2007.

## COUNT I
## Breach of Contract

15.     Lakritz Adler repeats and realleges the allegations set forth in each of the paragraphs above as if fully set forth herein.

16.     Both the 4201 Georgia Avenue Agreement and the 4205 Georgia Avenue Agreement are valid contracts between Lakritz Adler and the Murrells.

4

17.     By failing to remedy the hazardous environmental conditions associated with the 4205 Georgia Avenue Property, the Murrells materially breached the both 4201 Georgia Avenue Agreement and the 4205 Georgia Avenue Agreement.

18.     Lakritz Adler was otherwise prepared to close on both properties.

19.     As a direct result of the material breach, Lakritz Adler has suffered damages in excess of $75,000, exclusive of interest and costs.

## COUNT II
### Specific Performance

20.     Lakritz Adler repeats and realleges the allegations set forth in each of the paragraphs above as if fully set forth herein.

21.     As a matter of law, both the 4201 Georgia Avenue Property and the 4205 Georgia Avenue Property are unique and the monetary remedy is inadequate.

22.     Lakritz Adler has offered to perform all the obligations required of them in the 4201 Georgia Avenue Agreement and the 4205 Georgia Avenue Agreement.

23.     Lakritz Adler was otherwise prepared to close on both properties.

24.     The Defendants have refused to remedy the environmental hazards of the 4205 Georgia Avenue Property.  The environmental hazards are in direct conflict with the express representation, warranty and covenant set forth in Section 6.5 of the 4205 Georgia Avenue Agreement.

## COUNT III
### Injunctive Relief

25.     Lakritz Adler repeats and realleges the allegations set forth in each of the paragraphs above as if fully set forth herein.

26      Section 6.7 of both the 4201 Georgia Avenue Agreement and the 4205 Georgia Avenue Agreement states the following:

> "Seller shall not enter into or renew any lease relating to the Property following the ratification of this Agreement without the written permission of the Purchaser."

26.     On July 20, 2007, Lakritz Adler, by counsel, wrote to Defendants' counsel requesting, *inter alia*, that counsel "confirm in writing that your clients will not lease, sell or otherwise encumber in any manner the subject property during the pendency of the instant litigation."

27.     On July 25, 2007, Defendants, by counsel, advised Plaintiff's counsel that "the Murrells would not agree to any such restriction."

28.     In order for the Court to retain the ability to grant ultimate and effective relief to Plaintiff in this case, it is necessary that the Defendants be enjoined from selling, leasing, or otherwise encumbering the 4201 Georgia Avenue Property and the 4205 Georgia Avenue Property during the pendency of this case.

29.     If an Injunction pendente lite is not issued and Defendant sells, leases or otherwise encumbers the Plaintiff 4201 Georgia Avenue Property and/or the 4205 Georgia Avenue Property during the pendency of this case, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Lakritz Adler respectfully requests and prays that this Court:

1.      Enter a Preliminary and Permanent Injunction pendente lite against Defendants prohibiting them from selling, leasing, or otherwise encumbering the 4201

Georgia Avenue Property and/or the 4205 Georgia Avenue Property during the pendency of this case:

    2.    Enter a final judgment in favor of Plaintiff Lakritz Adler Development, LLC against Defendants Claude G. Murrell and Gloria N. Murrell, jointly and severally, as follows:

    (a)    Specific performance of both the 4201 Georgia Avenue Agreement and the 4205 Georgia Avenue Agreement; to wit: an Order requiring that the Murrells remedy the environmental hazards of the 4205 Georgia Avenue Property and then proceed to settlement on both the 4201 Georgia Avenue Property and the 4205 Georgia Avenue Property;

    (b)    Compensatory damages;

    (c)    Reasonable attorneys' fees and costs;

    (d)    Such other and further relief as may appear just and appropriate.

Dated: July 27, 2007               Respectfully submitted,

                                             /s/

                                    Steven D. Cundra
                                    Roetzel & Andress, LPA
                                    DC Bar Number 374074
                                    1300 Eye Street, N.W.
                                    Suite 400 East
                                    Washington, D.C. 20005
                                    Telephone: (202) 625-0600
                                    Facsimile: (202) 338-6340
                                    E-Mail: scundra@ralaw.com

3922 v_01 \ 117260.0003

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2007, I electronically filed Plaintiff's First Amended Complaint with the Court's Generic ECF EMAIL BOX and a copy of the First Amended Complaint and Exhibits to be mailed via first-class mail, postage prepaid, to Defendants' counsel:

Harold L. Segall, Esq.
Beveridge & Diamond, PC
1350 I Street, NW
Suite 700
Washington, DC  20005-3311


_____/s/_____
Steven D. Cundra
Roetzel & Andress, LPA
DC Bar Number 374074
1300 Eye Street, N.W.
Suite 400 East
Washington, D.C. 20005
Telephone: (202) 625-0600
Facsimile: (202) 338-6340
E-Mail: scundra@ralaw.com

# EXHIBIT A




## DISTRICT OF COLUMBIA
## REAL ESTATE PURCHASE AGREEMENT
## 4201 GEORGIA AVENUE, NW, WASHINGTON, D.C.

Effective Date: April 5, 2007

THIS REAL ESTATE PURCHASE AGREEMENT ("Agreement") is made and entered into by and between LAKRITZ ADLER DEVELOPMENT, LLC, a District of Columbia limited liability company, or its assignee, having an office at 4826 8th Street, NW, Washington, D.C. 20011 ("Purchaser") and CLAUDE G. MURRELL and GLORIA N. MURRELL, having an address of 2816 Keith Street, Temple Hills MD, 20748 ("Seller"). This Agreement supersedes, replaces and voids any prior agreement between the parties with respect to 4201 Georgia Avenue.

The parties hereto are desirous of entering into an agreement relating to the sale of certain property. In consideration of the foregoing and of mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1.  PROPERTY. Seller agrees to sell and convey to Purchaser, and Purchaser agrees to buy from Seller, upon the terms and conditions set forth herein, 5,245 square feet of land and all improvements thereon located at 4201 Georgia Avenue, NW, Washington, D.C., 20011 and known as Lots 802 in Square 8024W, (the "Property") together with easements, rights, privileges and appurtenances, leases, deposits, consents, authorizations, variances or waivers, licenses, certificates of occupancy, permits and approvals from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality with respect to the Property, including without limitation all architectural, engineering, surveying and planning contracts, plats, plans, specifications, surveys, appraisals and other work product, together with any and all approvals thereof by the District of Columbia belonging to the same.

2.  DEPOSIT. Within three business days of ratification of this Agreement, REGIONAL TITLE ("Title Company") shall receive from Purchaser a check ("Deposit") in the amount of TWELVE THOUSAND FIVE HUNDRED Dollars ($12,500.00) to be applied as partial payment of the Purchase Price of the Property. Title Company must provide evidence of the Deposit to Seller within five days of ratification.

3.  PURCHASE PRICE. The purchase price ("Purchase Price") of the Property is ONE MILLION AND xx/100 Dollars ($1,000,000.00).

4.  TITLE. The Property is sold free of encumbrance. Title is to be good of record and marketable, subject, however, to covenants, rights of way, easements, conditions, and restrictions of record, if any; which do not adversely affect the intended use of the Property by Purchaser: if not, said Deposit is to be returned and this Agreement declared void at the option of the Purchaser.

5.  DEED. Seller agrees to execute and deliver at settlement a good and sufficient special warranty deed (the "Deed").

6.  SELLER REPRESENTATIONS, WARRANTIES AND COVENANTS.

6.1 Seller has full power and authority to enter into this Agreement and to consummate the transactions herein contemplated. Neither the entering into of this Agreement nor the consummation of the transactions herein contemplated will (i) constitute a violation or breach by Seller of any contract, lease, cooperative by-laws, or other instrument to which Seller is a party, or to which Seller is subject, or (ii) result in a violation of any applicable law, order, rule or regulation of any applicable governmental authority.

6.2 There is no claim, action, suit or proceeding or to the knowledge of Seller, threatened, against or affecting either Seller or the Property or any portion thereof.

- 1 -          INITIAL: JAA   CGM   ~~FILED~~

07 1275

JUL 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

6.3 There is no pending, contemplated or threatened condemnation or similar proceeding or any litigation affecting the Property.

6.4 Seller shall: (a) deliver the Property in substantially the same physical condition as of the date hereof, (b) not defer normal maintenance of the Property during the period from the date hereof to the date of settlement and (c) not enter into, modify or terminate any maintenance or service contracts or leases relating to the Property prior to the date of settlement without the prior written consent of Purchaser.

6.5 There is no violation of any Federal or municipal environmental law, order, rule or regulation pertaining to the Property and no "Hazardous Substance" (as said term is hereinafter defined) is located on under or within any portion of the Property.  For purposes hereof, the term "Hazardous Substance" means any and all hazardous or toxic, wastes or materials which, because of their quantity, concentration, or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard or nuisance to human health, safety or welfare or to the environment when used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled, including without limitation, any substance, waste or material which is or contains asbestos, radon, polychlorinated biphenyls, urea formaldehyde, explosives, radioactive materials or petroleum products.

6.6 Within five days after its execution hereof, Seller will deliver to Purchaser copies of any of the following documents related to the Property which Seller may have: surveys, income statements and leases for 4205 Georgia Ave., and any architectural plans, certificates of occupancy or other relevant documents in Seller's possession (such as environmental studies conducted for a prior financing). Seller has disclosed any and all material information regarding the same, including any violations of applicable laws, codes, rules and regulations pertaining to the same.

6.7 Seller shall not enter into or renew any lease relating to the Property following the ratification of this Agreement without the written permission of the Purchaser.

6.8 There are no leases, subleases, licenses or other rental or occupancy agreements (oral or written) with respect to or affecting the Property There are no service, maintenance, supply, management, leasing, brokerage or other contracts in effect that affect the Property or the use, occupancy, operation, sale or leasing of the Property that cannot be cancelled without any cost with 30-days notice to provider.  There are no outstanding purchase contracts, options, leases or any other agreements of any kind, written or oral, recorded or unrecorded, whereby any person or entity other than the Seller has acquired or has any basis to assert any lien (except those that shall be discharged by Seller at Closing), right, title or interest in, or right to possession, use, enjoyment or proceeds of all or any portion of the Property.

7.   ADJUSTMENTS. Rents, taxes, water rent, insurance and interest on existing encumbrances (if any), cost of fuel in storage tanks, salaries and accrued benefits of employees (if any), and operating charges (including, without limitation, utilities charges) are to be adjusted to the date of transfer. Taxes, general and special, are to be adjusted according to the certificate of taxes as issued by the Collector of Taxes, except that assessments for improvements completed prior to the date hereof, whether assessment therefore has been levied or not, shall be paid by the Seller or allowance made therefore at the time of transfer and assumed therefore by purchaser.  Seller shall remain liable for any housing code violations assessed and incurred prior to closing.

8.   CLOSING AND RECORDING COSTS. Transfer and Recordation taxes shall be split equally between Seller and Purchaser. Seller will not pay any other closing costs for Purchaser.

9.   SETTLEMENT.  On or before sixty (60) days after the date of ratification of this Agreement, Seller and Purchaser agree to make full settlement of said purchase in accordance with the terms hereof, TIME OF THE ESSENCE WITH RESPECT THERETO.  As of the settlement date, no part of the Property shall have been acquired, or shall be about to be acquired, by any governmental authority or agency in the exercise of its power or eminent domain or by private purchase in lieu thereof, nor shall there be any threat or imminence of any such acquisition or purchase.  In the event

-2-

INITIAL: JAA _____

the Seller fails to consummate said sale in accordance with the provisions of this Agreement, the Purchaser may pursue any legal or equitable rights available under law.

10. **DUE DILIGENCE PERIOD.** After the date of ratification of this Agreement, Purchaser shall have seven (7) days to cancel the contract at Purchaser's sole discretion for any reason, in which case deposit shall be refunded immediately to Purchaser. Seller shall grant Purchaser reasonable access to the Property for due diligence purposes during and after this period. Property shall convey in "As-Is" condition.

11. **PLACE OF SETTLEMENT AND TITLE COMPANY.** Settlement is to be made at the Title Company or other agency employed to examine the title. Deposit with the Title Company or such other agency of that part of the Purchase Price to be paid, the Deed and such other papers as are required of either Seller or Purchaser by the terms of this Agreement, within the time above provided for the consummation of this Agreement, shall be considered good and sufficient tender of the performance by either of said parties of the terms hereof.

12. **[INTENTIONALLY DELETED]**

13. **LOCAL VIOLATIONS; CONDITION AND OPERATION OF PROPERTY.** All written notices or violations of statutes, municipal codes or regulations issued by any department of the jurisdiction in which the Property is situated, or prosecutions in any of the courts of the jurisdiction in which the Property is situated on account thereof, against or affecting the Property that have been received by Seller as of the Date of Agreement shall be complied with by the Seller and the Property conveyed free thereof.

14. **D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristics of the soil on the Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia is Urban Land. For further information, the Purchaser can contact a soil testing laboratory, the District of Columbia Dept. of Environmental Services, or the Soil Conservation Service of the Dept. of Agriculture.

15. **DISTRICT OF COLUMBIA UNDERGROUND STORAGE TANK DISCLOSURE NOTICE.** In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990, as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act"), Seller has informed Purchaser, and hereby re-informs Purchaser, that Seller has no knowledge of the existence of any underground storage tanks on the Property.

16. **BINDING EFFECT; ENTIRE AGREEMENT.** Purchaser and Seller mutually agree that this Agreement shall be binding upon them, and their respective heirs, executors, administrators, successors and assigns; that the provisions hereof shall survive the execution and delivery of the Deed aforesaid and shall not be merged therein; that this Agreement contains the final and entire Agreement between the parties hereto, and that they shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written, express or implied, not herein contained.

17. **CONFIDENTIALITY.** Seller shall not, without the prior written consent of Purchaser, disclose or provide a copy of this Agreement, or any part hereof, including but not limited to Purchase Price, or disclose or provide a copy of any of the agreements, covenants or transactions contained herein, or delivered in connection herewith, to any third party (other than to Seller's professional advisors, management agents, or to others as Seller may be required by process of law).

18. **PURCHASER DEFAULT.** If Purchaser shall fail or refuse to purchase the Property in violation of Purchaser's obligations hereunder for any reason other than a default by Seller under this Agreement or a failure of condition precedent to Closing hereunder, and provided that Seller is then ready, willing and able to proceed to Closing, Seller shall have as its sole remedy the right to terminate this Agreement and retain the full amount of the Deposit and all interest earned thereon. Seller and Purchaser acknowledge and agree that the Deposit constitutes a fair and reasonable amount to be received by Seller as agreed and liquidated damages for Purchaser's default under this Agreement and Seller waives all other claims for damages except for any claims of indemnification which survive termination of this Agreement.

-3-        INITIAL: _JAA_ _____ _____

*JAA* → All parties agree that the Addendum Created 5-13-07, is hereby attached hereto and made a part of this Contract.

19. **SELLER FINANCING.** Seller hereby agrees to provide to Purchaser at Settlement takeback financing in the maximum original principal amount of Three Hundred Thousand and no/100 Dollars ($300,000.00), secured exclusively by the guarantees of LeKritz Adler Development, LLC and Robb LeKritz and Joshua Adler personally, on the terms and conditions provided in a Note and Deed of Trust to be prepared by Seller's Attorney prior to Settlement (the "Note") with the terms contained in this Paragraph and other essential content advised by Seller's attorney. The amount of Seller Financing may be reduced at Purchaser's sole option at any time prior to Closing. The interest rate shall be 8% per annum, compounding annually. The term of the Note shall be thirty years, amortizing fully over the term, and any portion of the Note may be prepaid by Purchaser without penalty. Interest on the Note shall accrue from the date of Settlement, but no payments shall be due until one year after Settlement. Accrued interest shall be added to the principal and shall amortize over a period of 29 years. The Note signed at Settlement shall reflect this provision. Seller shall promptly execute any subordination agreements required by Purchaser's first trust lender(s). A 5% late fee shall apply to any payment on the Note which is more than ten days late. During the time the Note is outstanding, Purchaser shall annually provide a certificate of insurance showing Seller as an additional insured and Purchaser shall also provide evidence to Seller that property taxes have been paid within 30 days of their initial due date.

20. **AS-IS CONDITION.** Property shall convey in "As-Is" condition.

21. **POST-SETTLEMENT OCCUPANCY.** Seller shall be granted a license to occupy the ground floor of 4201 Georgia solely for commercial office use for a period of not more than 87 days beginning on the date of Settlement, for a cost of $3,700, to be collected at Settlement. During the Post-Settlement Occupancy, Seller shall be responsible for any and all expenses and real estate taxes for the Property, a reasonable estimate of which shall be collected at Settlement for the benefit of the Purchaser.

22. **BROKERAGE.** Sellers are licensed realtors in Washington, D.C. Seller shall pay a 6% real estate commission to Murrell, Inc., Realtors.

23. **FINANCING COMMITMENT.** Purchaser shall provide a loan commitment to Seller within 45 days of contract ratification. If Purchaser fails to provide such a commitment, Seller shall have the option to terminate this Agreement.

24. **TAX-FREE EXCHANGE PROVISION.** Both Purchaser and Seller may close this transaction as part of a like-kind exchange of properties under Section 1031 of the Internal Revenue Code of 1986, as amended, and applicable rules and regulations. Purchaser and Seller shall each bear their own costs for any such exchange. Seller and Purchaser shall reasonably cooperate with each other and do all things reasonably requested by the other party (provided that such actions do not increase the other party's obligations or liabilities under this Agreement) to effect and facilitate such an exchange. Anything in this section to the contrary notwithstanding, (i) in no event shall Seller or Purchaser be required to take title to any exchange or replacement property; and (ii) in no event shall completion of any such exchange be a cause or excuse for any delay in the date of Settlement.

25. **PARKING AND SIGNAGE.** The Property shall convey to Purchaser with any and all parking and signage rights or privileges previously benefiting Murrell Realtors or Seller on or about 4201 Georgia and 4205 Georgia Avenue. No entity or person other than the Pizza Hut located at 4205 Georgia (and only as described in Pizza Hut lease with Seller dated October 9th, 1986 and as amended from time to time up until the Ratification Date of this Agreement) and Purchaser shall have any rights to signage or parking on or about 4201 Georgia or 4205 Georgia.

→ Settlement on 4201 and 4205 Georgia Ave. are to coincide and are contingent on both settlements being fully consummated the same day - Settlement must be completed on 4201 Georgia prior to 4205 Georgia. The title company shall not be permitted to record either transaction unless both settlements are completed.

INITIAL: JAA _____

-4-

26. NOTICES. Notices shall be delivered to the following addresses:

If to Purchaser:
LAKRITZ ADLER DEVELOPMENT, LLC
C/O JOSHUA ADLER
4328 5TH STREET, NW
WASHINGTON, D.C. 20011
FAX 202-552-0509

If to Seller:
CLAUDE G MURRELL
2818 KEITH STREET
TEMPLE HILLS, MD 20748
FAX 425-223-4219

WE, THE UNDERSIGNED, HEREBY RATIFY, ACCEPT AND AGREE TO THE ABOVE AND
ACKNOWLEDGE IT TO BE OUR AGREEMENT. THIS IS A LEGALLY BINDING AGREEMENT.
PURCHASER AND SELLER SHOULD SEEK COMPETENT LEGAL ADVICE BEFORE SIGNING.

PURCHASER:

Print: JOSHUA ADLER
Title: Managing Member

Print:

SELLER:

Print: CLAUDE G. MURRELL
Title:

Print: GLORIA N. MURRELL

DATE OF RATIFICATION AND ACCEPTANCE: 5TH DAY OF APRIL, 2007

- 5 -      INITIAL

## ADDENDUM TO THE CONTRACT FOR 4201 GEORGIA AVE., NW, WASHINGTON, DC, Effective Date: April 5, 2007

### May 13, 2007

With respect to the seller financing on the subject property, the payments on the Deferred Purchase Money Deed of Trust and Note shall commence twelve (12) months after closing, and the payments, which shall consist of principal and interest, shall be paid equally on a consecutive monthly basis for a period of twenty-nine (29) years, with payments to be made on the first day of each month. Additionally, the interest rate on the Seller financing shall be 8% per annum, compounding only for the first year of the term of the note, which accrued interest for the first year will be added to the principal amount of the note and deed of trust, and the payments shall then be amortized over a period of twenty nine (29) years.

Seller's Counsel shall prepare the Deed of Trust, Deed of Trust Note, Assignment of Rents and Leases, Guarantees, and such other documents as Counsel for Seller determines is necessary in order to secure and protect the deferred Purchase money, Seller held financing for the subject purchase between Seller and Purchaser.

PURCHASER:

_____
JOSHUA ADLER

5/14/07
_____
DATE

SELLER:

_____
CLAUDE G. MURRELL

_____
GLORIA N. MURRELL

5/13/07
_____
DATE

# EXHIBIT B

SENT BY: ;     3012920943;     MAY-13-07   8:10PM;     PAGE 7/11

# DISTRICT OF COLUMBIA
## REAL ESTATE PURCHASE AGREEMENT
### 4205 GEORGIA AVENUE, NW, WASHINGTON, D.C.

**Effective Date: April 5, 2007**

THIS REAL ESTATE PURCHASE AGREEMENT ("Agreement") is made and entered into by and between LAKRITZ ADLER DEVELOPMENT, LLC, a District of Columbia limited liability company, or its assignee, having an office at 4326 8th Street, NW, Washington, D.C. 20011 ("Purchaser") and CLAUDE G. MURRELL and GLORIA N. MURRELL, having an address of 2816 Keith Street, Temple Hills MD, 20748 ("Seller"). This Agreement supercedes, replaces and voids any prior agreement between the parties with respect to 4205 Georgia.

The parties hereto are desirous of entering into an agreement relating to the sale of certain property. In consideration of the foregoing and of mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. **PROPERTY.** Seller agrees to sell and convey to Purchaser, and Purchaser agrees to buy from Seller, upon the terms and conditions set forth herein, 5,243 square feet of land and all improvements thereon located at 4205 Georgia Avenue, NW, Washington, D.C., 20011 and known as Lot 1 in Square 3024W, (the "Property") together with easements, rights, privileges and appurtenances, leases, deposits, consents, authorizations, variances or waivers, licenses, certificates of occupancy, permits and approvals from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality with respect to the Property, including without limitation all architectural, engineering, surveying and planning contracts, plats, plans, specifications, surveys, appraisals and other work product, together with any and all approvals thereof by the District of Columbia belonging to the same.

2. **DEPOSIT.** Within three business days of ratification of this Agreement, REGIONAL TITLE ("Title Company") shall receive from Purchaser a check ("Deposit") in the amount of TWELVE THOUSAND FIVE HUNDRED Dollars ($12,500.00) to be applied as partial payment of the Purchase Price of the Property. Title Company must provide evidence of the Deposit to Seller within five days of ratification.

3. **PURCHASE PRICE.** The purchase price ("Purchase Price") of the Property is SIX HUNDRED THOUSAND AND xx/100 Dollars ($600,000.00).

4. **TITLE.** The Property is sold free of encumbrance. Title is to be good of record and marketable, subject, however, to covenants, rights of way, easements, conditions, and restrictions of record, if any; which do not adversely affect the intended use of the Property by Purchaser; if not, said Deposit is to be returned and this Agreement declared void at the option of the Purchaser.

5. **DEED.** Seller agrees to execute and deliver at settlement a good and sufficient special warranty deed (the "Deed").

6. **SELLER REPRESENTATIONS, WARRANTIES AND COVENANTS.**

6.1 Seller has full power and authority to enter into this Agreement and to consummate the transactions herein contemplated. Neither the entering into of this Agreement nor the consummation of the transactions herein contemplated will (i) constitute a violation or breach of Seller of any contract, lease, cooperative by-laws, or other instrument to which Seller is a party, or to which Seller is subject, or (ii) result in a violation of any applicable law, order, rule or regulation of any applicable governmental authority.

6.2 There is no claim, action, suit or proceeding or to the knowledge of Seller, threatened, against or affecting either Seller or the Property or any portion thereof.

07 1275



- 1 -     INITIAL: JAA , [signature]

FILED

JUL 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

6.3 There is no pending, contemplated or threatened condemnation or similar proceeding or any litigation affecting the Property.

6.4 Seller shall: (a) deliver the Property in substantially the same physical condition as of the date hereof, (b) not defer normal maintenance of the Property during the period from the date hereof to the date of settlement; and (c) not enter into, modify or terminate any maintenance or service contracts or leases relating to the Property prior to the date of settlement without the prior written consent of Purchaser.

6.5 There is no violation of any Federal or municipal environmental law, order, rule or regulation pertaining to the Property and no "Hazardous Substance" (as said term is hereinafter defined) is located on under or within any portion of the Property.  For purposes hereof, the term "Hazardous Substance" means any and all hazardous or toxic, wastes or materials which, because of their quantity, concentration, or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard or nuisance to human health, safety or welfare or to the environment when used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled, including without limitation, any substance, waste or material which is or contains asbestos, radon, polychlorinated biphenyls, urea formaldehyde, explosives, radioactive materials or petroleum products.

6.6 Within five days after its execution hereof, Seller will deliver to Purchaser copies of any of the following documents related to the Property which Seller may have: surveys, income statements and lease for 4205 Georgia Ave., and any architectural plans, certificates of occupancy or other relevant documents in Seller's possession (such as environmental studies conducted for a prior financing).  Seller has disclosed any and all material information regarding the same, including any violations of applicable laws, codes, rules and regulations pertaining to the same.

6.7 Seller shall not enter into or renew any lease relating to the Property following the ratification of this Agreement without the written permission of the Purchaser.

6.8 There are no leases, subleases, licenses or other rental or occupancy agreements (oral or written) with respect to or affecting the Property except for a lease of 4205 Georgia to Pizza Hut paying a net rent of not less than $4,000 per month, with a remaining term of two and one-half years and two remaining five-year options.  There are no service, maintenance, supply, management, leasing, brokerage or other contracts in effect that affect the Property or the use, occupancy, operation, sale or leasing of the Property that cannot be cancelled without any cost with 30-days notice to provider.  There are no outstanding purchase contracts, options, leases or any other agreements of any kind, written or oral, recorded or unrecorded, whereby any person or entity other than the Seller has acquired or has any basis to assert any lien (except those that shall be discharged by Seller at Closing), right, title or interest in, or right to possession, use, enjoyment or proceeds of all or any portion of the Property.

7. ADJUSTMENTS. Rents, taxes, water rent, insurance and interest on existing encumbrances (if any), cost of fuel in storage tanks, salaries and accrued benefits of employees (if any), and operating charges (including, without limitation, utilities charges) are to be adjusted to the date of transfer. Taxes, general and special, are to be adjusted according to the certificate of taxes as issued by the Collector of Taxes, except that assessments for improvements completed prior to the date hereof, whether assessment therefore has been levied or not, shall be paid by the Seller or allowance made therefore at the time of transfer and assumed therefore by purchaser.  Seller shall remain liable for any housing code violations assessed and incurred prior to closing.

8. CLOSING AND RECORDING COSTS. Transfer and Recordation taxes shall be split equally between Seller and Purchaser, Seller will not pay any other closing costs for Purchaser.

9. SETTLEMENT. On or before sixty (60) days after the date of ratification of this Agreement, Seller and Purchaser agree to make full settlement of said purchase in accordance with the terms hereof, TIME OF THE ESSENCE WITH RESPECT THERETO. As of the settlement date, no part of the Property shall have been acquired, or shall be about to be acquired, by any governmental

-2-

INITIAL: _JAA_  _APM_  _HMM_

SENT BY: ;                        3012920943;              MAY-13-07  8:11PM;          PAGE 9/11

authority or agency in the exercise of its power or eminent domain or by private purchase in lieu thereof, nor shall there be any threat or imminence of any such acquisition or purchase. In the event the Seller fails to consummate said sale in accordance with the provisions of this Agreement, the Purchaser may pursue any legal or equitable rights available under law.

10. DUE DILIGENCE PERIOD. After the date of ratification of this Agreement, Purchaser shall have seven (7) days to cancel the contract at Purchaser's sole discretion for any reason, in which case deposit shall be refunded immediately to Purchaser. Seller shall grant Purchaser reasonable access to the Property for due diligence purposes during and after this period. Property shall convey in "As-Is" condition.

11. PLACE OF SETTLEMENT AND TITLE COMPANY. Settlement is to be made at the Title Company or other agency employed to examine the title. Deposit with the Title Company or such other agency of that part of the Purchase Price to be paid, the Deed and such other papers as are required of either Seller or Purchaser by the terms of this Agreement, within the time above provided for the consummation of this Agreement, shall be considered good and sufficient tender of the performance by either of said parties of the terms hereof.

12. [INTENTIONALLY DELETED]

13. LOCAL VIOLATIONS; CONDITION AND OPERATION OF PROPERTY. All written notices or violations of statutes, municipal codes or regulations issued by any department of the jurisdiction in which the Property is situated, or prosecutions in any of the courts of the jurisdiction in which the Property is situated on account thereof, against or affecting the Property that have been received by Seller as of the Date of Agreement shall be complied with by the Seller and the Property conveyed free thereof.

14. D.C. SOIL DISCLOSURE REQUIREMENTS. The characteristics of the soil on the Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia is Urban Land. For further information, the Purchaser can contact a soil testing laboratory, the District of Columbia Dept. of Environmental Services, or the Soil Conservation Service of the Dept. of Agriculture.

15. DISTRICT OF COLUMBIA UNDERGROUND STORAGE TANK DISCLOSURE NOTICE. In accordance with the requirements of Section 8(g) of the District of Columbia Underground Storage Tank Management Act of 1990, as amended by the District of Columbia Underground Storage Tank Management Act of 1992 (the "Act"), Seller has informed Purchaser, and hereby re-informs Purchaser, that Seller has no knowledge of the existence of any underground storage tanks on the Property.

16. BINDING EFFECT; ENTIRE AGREEMENT. Purchaser and Seller mutually agree that this Agreement shall be binding upon them, and their respective heirs, executors, administrators, successors and assigns; that the provisions hereof shall survive the execution and delivery of the Deed aforesaid and shall not be merged therein; that this Agreement contains the final and entire Agreement between the parties hereto, and that they shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written, express or implied, not herein contained.

17. CONFIDENTIALITY. Seller shall not, without the prior written consent of Purchaser, disclose or provide a copy of this Agreement, or any part hereof, including but not limited to Purchase Price, or disclose or provide a copy of any of the agreements, covenants or transactions contained herein, or delivered in connection herewith, to any third party (other than to Seller's professional advisors, management agents, or to others as Seller may be required by process of law).

18. PURCHASER DEFAULT. If Purchaser shall fail or refuse to purchase the Property in violation of Purchaser's obligations hereunder for any reason other than a default by Seller under this Agreement or a failure of condition precedent to Closing hereunder, and provided that Seller is then ready, willing and able to proceed to Closing, Seller shall have as its sole remedy the right to terminate this Agreement and retain the full amount of the Deposit and all interest earned thereon. Seller and Purchaser acknowledge and agree that the Deposit constitutes a fair and reasonable amount to be received by Seller as agreed liquidated damages for Purchaser's default under this

- 3 -            INITIAL: _JAA_ , _____ _____

Agreement and Seller waives all other claims for damages except for any claims of indemnification which survive termination of this Agreement.

19. [INTENTIONALLY DELETED]

20. AS-IS CONDITION.  Property shall convey in "As-Is" condition.

21. [INTENTIONALLY DELETED]

22. BROKERAGE.  Sellers are licensed realtors in Washington, D.C.  Seller shall pay a 6% real estate commission to Murrell, Inc., Realtors.

23. FINANCING COMMITMENT.  Purchaser shall provide a loan commitment to Seller within 45 days of contract ratification.  If Purchaser fails to provide such a commitment, Seller shall have the option to terminate this Agreement.

24. TAX-FREE EXCHANGE PROVISION.  Both Purchaser and Seller may close this transaction as part of a like-kind exchange of properties under Section 1031 of the Internal Revenue Code of 1986, as amended, and applicable rules and regulations.  Purchaser and Seller shall each bear their own costs for any such exchange.  Seller and Purchaser shall reasonably cooperate with each other and do all things reasonably requested by the other party (provided that such actions do not increase the other party's obligations or liabilities under this Agreement) to effect and facilitate such an exchange.  Anything in this section to the contrary notwithstanding, (i) in no event shall Seller or Purchaser be required to take title to any exchange or replacement property; and (ii) in no event shall completion of any such exchange be a cause or excuse for any delay in the date of Settlement.

25. PARKING AND SIGNAGE.  The Property shall convey to Purchaser with any and all parking and signage rights or privileges previously benefiting Murrell Realtors or Seller on or about 4201 Georgia and 4205 Georgia Avenue.  No entity or person other than the Pizza Hut located at 4205 Georgia (and only as described in Pizza Hut lease with Seller dated October 9th, 1988 and as amended from time to time up until the Ratification Date of this Agreement) and Purchaser shall have any rights to signage or parking on or about 4201 Georgia or 4205 Georgia.

> Settlement on 4201 and 4205 Georgia Ave.
are to coincide and are contingent
on both settlements being fully
consummated the same day. Settlement
must be completed on 4201 Georgia
prior to 4205 Georgia. The title
company shall not be permitted to
record either transaction unless
both settlements are completed.

-4-        INITIAL: JAA

26. NOTICES. Notices shall be delivered to the following addresses:

If to Purchaser:                           If to Seller:
LAKRITZ ADLER DEVELOPMENT, LLC             CLAUDE G MURRELL
C/O JOSHUA ADLER                           2816 KEITH STREET
4826 8TH STREET, NW                        TEMPLE HILLS, MD 20748
WASHINGTON, D.C. 20011                     FAX 425-228-4219
FAX 202-882-0802

WE, THE UNDERSIGNED, HEREBY RATIFY, ACCEPT AND AGREE TO THE ABOVE AND
ACKNOWLEDGE IT TO BE OUR AGREEMENT. THIS IS A LEGALLY BINDING AGREEMENT.
PURCHASER AND SELLER SHOULD SEEK COMPETENT LEGAL ADVICE BEFORE SIGNING.

PURCHASER:                                 SELLER:

Print: JOSHUA ADLER                        Print: CLAUDE G. MURRELL
Title: Managing Member                     Title:

Print:                                     Print: GLORIA N. MURRELL

DATE OF RATIFICATION AND ACCEPTANCE: 5TH DAY OF APRIL, 2007

-5-         INITIAL